## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

RNA CORPORATION,
an Illinois corporation,

        Plaintiff,

    v.

MINNETONKA BRANDS, INC.,
a Minnesota corporation,

        Defendant.

**01C 6321**

No.

**JURY TRIAL DEMANDED**  JUDGE MORAN

MAGISTRATE JUDGE DENLOW

DOCKETE

AUG 1 7 20

## COMPLAINT

    Plaintiff, RNA Corporation, an Illinois corporation, by its undersigned attorneys, for its Complaint against Defendant, Minnetonka Brands, Inc., a foreign corporation, states as follows:

### Count I – Breach of Contract

    1.    Plaintiff, RNA Corporation ("RNA"), is an Illinois corporation with its principal place of business located at 13750 South Chatham Street, Blue Island, Cook County, Illinois. RNA is a contract filler and assembler of personal care products, including hair care and bath products.

    2.    Defendant, Minnetonka Brands, Inc. ("MBI"), is a Minnesota corporation with its principal place of business located at 7665 Commerce Way, Eden Prairie, Minnesota. MBI is in the business of marketing, on a wholesale basis, proprietary brands of personal care products, including hair care and bath products.

    3.    The jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1332, in that the amount in controversy exceeds $75,000, exclusive of costs and interest, and there is diversity of citizenship between the parties. In addition, the parties have stipulated to this Court's jurisdiction. (See "Contract Filling Purchase Agreement" dated March 1, 1999, ¶ 11, attached as Exhibit A.)

4.      Venue for this action is proper in this district pursuant to 28 U.S.C. § 1391(a)(2) in that a substantial part of the events or omissions giving rise to the claim occurred in this judicial district.

5.      In March 1999, RNA and MBI entered into a minimum three-year "Contract Filling Purchase Agreement" dated March 1, 1999 (the "Agreement").  A true and correct copy of the Agreement is attached as Exhibit A.  Under the terms of the Agreement, RNA committed to assembling and furnishing MBI with a minimum of 600,000 units of various personal care products on a monthly basis, and quoted prices for such products based on the stated quantities.  In exchange, MBI agreed to purchase such minimum quantities and to pay RNA in accordance with the terms set forth therein.

6.      To furnish MBI with the products requested in sufficient quantities and to comply with its other obligations under the Agreement, RNA purchased additional equipment, including a 16-head rotary filler and capper machine, two labeler units, two 4,000-gallon tanks, and a video jet coder, and secured approximately 16,000 additional feet of warehouse space for storage of MBI components, all at substantial cost.  In addition, RNA purchased significant quantities of specially blended chemicals specific to the MBI production, and remains in possession of certain of these chemicals at a cost of $45,636.41.  The cost of this equipment, materials, space rental and chemicals exceeds $100,000.

7.      In September 1999, after MBI had accepted significant quantities of specially designed hair care and bath products from RNA, and MBI had incurred a sizeable, unpaid balance with RNA, MBI began a financial reorganization.  In recognition of the financial constraints facing MBI, RNA agreed to defer enforcement of the payment term of "Net 60 days from shipment or

storage at RNA" for future orders. In consideration thereof, MBI committed to making weekly payments to RNA of $10,000, less the value of goods ordered and shipped for the period September 17, 1999 to October 8, 1999, and weekly payments of $20,000, less the value of goods ordered and shipped thereafter, until the remaining MBI balance was paid in full.

8.    During the third quarter of 2000, MBI informed RNA that it would not be able to meet the $20,000 weekly minimum payment, due to a decline in business. At MBI's request, RNA extended a grace period based upon MBI's commitment to submit and adhere to a payment schedule for the fourth quarter.

9.    On October 5, 2000, MBI submitted a pay schedule for the 12-week period of October 13 through December 29, 2000. MBI's schedule, a copy of which is attached as Exhibit B, committed MBI to a "Best Case" and "Worst Case" scenario for payment during the 5-week period of October 13 through November 10, 2000, and only a "Best Case" scenario of $20,000 per week for the 7-week period of November 17 through December 29, 2000.

10.    While MBI's payment for the 5-week period ending with the week of November 10, 2000 did fall within the broad range it established, not one payment made during the period ending December 29, 2000 even approached the $20,000 level MBI set for itself. Rather than pay the committed-to sum of $140,000 for this period, MBI paid, in the aggregate, only $70,800.81. Continuing thereafter, MBI has made only partial payments on RNA invoices, and even these were made months after the invoices were due, and in insubstantial amounts.

11.    As contemplated by ¶ 7 of the Agreement, on January 19, 2001, RNA sent MBI a Notice to Cure its breaches of the Agreement within 30 days. A copy of the 1/19/01 letter is attached as Exhibit C. MBI did not so cure.

12.     On January 25, 2001, MBI responded by asking RNA to reestablish manufacturing activities, offered to make weekly installment payments in an effort to reduce the outstanding accounts receivable, and pledged to "attempt to pay full invoices rather than partial payments on an invoice." A copy of the 1/25/01 letter is attached as Exhibit D.

13.     After RNA rejected MBI's January 25, 2001 offer during a personal meeting on or about February 1, 2001, MBI reformulated its proposal on February 12, 2001, suggesting new pricing for the specified products and vowing to increase volume with RNA as its financial condition improves. A copy of the 2/12/01 letter is attached as Exhibit E.

14.     On February 27, 2001, RNA forwarded to MBI a proposed Memorandum of Agreement as a rider to the parties' original Agreement which, among other things, accepted certain of MBI's pricings for products while offering both lower and higher prices for certain other products. A copy of the 2/27/01 rider is attached as Exhibit F.  MBI never signed the proposed rider, and neither party accepted the rider to the Agreement.

15.     By letter dated March 26, 2001, MBI repudiated its contract with RNA and purported to terminate the parties' business relationship, but pledged to "maintain a payment schedule to clear up old debt at the rate of $150,000 per year." A copy of the 3/26/01 letter is attached as Exhibit G. MBI failed to give 90 days notice of termination as required by ¶ 7 of the Agreement.  MBI's debt to RNA was never "cleared up."

16.     MBI breached the terms of the Agreement, including, but not limited to, in the following material respects:

a) failing to meet the payment terms as set forth in ¶ 2;

b) failing to place orders for products in the quantities specified in ¶ 4;

c) failing to provide RNA with monthly filling forecasts detailing contract filling needs for a rolling four-month period as set forth in ¶ 3;

d) failing to provide RNA with monthly firm purchase orders detailing the required production for the following month as set forth in ¶ 4;

e) failing to have suitable packaging components delivered to RNA 15 days prior to production as set forth in ¶ 4; and

f) purporting to terminate its contract with RNA on or about March 26, 2001 without providing the advance notice required under ¶ 7 or ¶ 8, or the indemnification for specially purchased chemicals required under ¶¶ 3 and 8 thereof.

17.    MBI is in violation of the terms of the Agreement, including its payment obligations despite demand made by RNA, the 90-day written notice of termination provision, and the terms of its own fourth quarter of 2000 payment schedule (Exhibit B).  Moreover, MBI has failed to meet its monthly purchasing requirements.

18.    RNA has complied with all material obligations required on its part under the terms of the Agreement.

19.    As a proximate result of MBI's breaches, including by failing to satisfy its outstanding balance, RNA incurred contract damages that, as of April 2001, totaled $270,880.92, and the cost of the additional equipment and warehouse space secured for the MBI production in anticipation of fulfilling the Agreement, plus the cost of the unused, specially blended chemicals specifically purchased for MBI production, in a total amount that exceeds $100,000.00.

WHEREFORE, plaintiff RNA Corporation prays that this Court enter judgment in its favor and against defendant Minnetonka Brands, Inc. in an amount to be determined by the trier of fact

but in no event less than $370,880.92, plus prejudgment interest pursuant to 815 ILCS 205/2, and costs of suit.

## Count II – UCC § 2-709

20.     RNA realleges and incorporates the allegations contained in paragraphs 1-18 of Count I as paragraph 20 of this Count II, as though fully set forth herein.

21.     At all times pertinent, there was in force and effect a statute known as section 2-709 of the Illinois Uniform Commercial Code, 810 ILCS 5/2-709, which provides that a seller may recover, together with its incidental damages, the price of goods accepted by the buyer who refuses to pay for such goods as they become due.

22.     As a proximate result of MBI's refusal to pay for goods from RNA as they became due, RNA incurred damages that, as of April 2001, totaled $270,880.92, and incidental damages including the cost of the additional equipment and warehouse space secured for the MBI production in anticipation of fulfilling the Agreement, and the cost of the unused, specially blended chemicals specifically purchased for MBI production, in a total amount that exceeds $100,000.00.

WHEREFORE, plaintiff RNA Corporation prays that this Court enter judgment in its favor and against defendant Minnetonka Brands, Inc. in an amount to be determined by the trier of fact but in no event less than $370,880.92 pursuant to 810 ILCS 5/2-709, plus prejudgment interest and costs of suit.

## Count III – UCC § 2-708

23.     RNA realleges and incorporates the allegations contained in paragraphs 1-18 of Count I as paragraph 23 of this Count III, as though fully set forth herein.

24.     At all times pertinent, there was in force and effect a statute known as section 2-708 of the Illinois Uniform Commercial Code, 810 ILCS 5/2-708, which allows for the recovery of lost profits and incidental damages from a buyer who repudiates the contract.

25.     As a proximate result of MBI's repudiation of the Agreement, RNA has lost the profits it reasonably expected to make from full performance of the Agreement by MBI, in an amount to be determined by the trier of fact, and in reliance upon which RNA incurred significant expenses, including for the equipment, chemicals and warehouse space it invested in to meet the production and shipping requirements of MBI.

WHEREFORE, plaintiff RNA Corporation prays that this Court enter judgment in its favor and against defendant Minnetonka Brands, Inc. in an amount to be determined by the trier of fact to reasonably compensate it for the profits lost as a consequence of MBI's repudiation of the Agreement pursuant to 810 ILCS 5/2-708(2), plus its incidental damages, prejudgment interest and costs of suit.

## Count IV – Account Stated

26.     RNA realleges and incorporates the allegations contained in paragraphs 1-19 of Count I as paragraph 23 of this Count IV, as though fully set forth herein.

27.     RNA regularly sent to MBI statements of its account with RNA.  MBI consistently retained these statements of account dating to 1999 without interposing any objections to their accuracy or validity.  In fact, MBI acquiesced in the accuracy and validity of such statements by (among other things) making partial payments.

28.     An account was stated between the parties.

WHEREFORE, plaintiff RNA Corporation prays that this Court enter judgment in its favor and against defendant Minnetonka Brands, Inc. in an amount to be determined by the trier of fact but

in no event less than $370,880.92, plus prejudgment interest pursuant to 815 ILCS 205/2, and costs of suit.

## Count V – Promissory Estoppel (Pled in the Alternative)

29.    Pleading in the alternative, RNA realleges and incorporates the allegations contained in paragraphs 1-6 and 15-17 of Count I as paragraph 29 of this Count V, as though fully set forth herein.

30.    Prior to investing in the equipment necessary to meet the projected production demands of MBI, RNA fully related to MBI its intentions to make major purchases of equipment and to secure warehouse space to be in a position to meet MBI's projected production volumes. As an enticement to make such purchases, MBI promised to enter into and honor a minimum three-year purchase agreement with RNA, and to order a minimum of 600,000 units of various personal care products on a monthly basis.

31.    In reliance on MBI's unambiguous promises, RNA purchased the necessary production equipment, secured the warehouse space, and incurred additional expenses to be able to furnish MBI with its projected monthly quantities of products for a minimum of three years. RNA has no reasonable, alternative use to make of such equipment, and has been damaged in the amount of these expenditures as a proximate result of its reliance on MBI's unambiguous promises.

WHEREFORE, plaintiff RNA Corporation prays that this Court enter judgment in its favor and against defendant Minnetonka Brands, Inc. in an amount to be determined by the trier of fact to reasonably compensate it for the production equipment, warehouse space, and additional expenses that it incurred, plus costs of suit.

## JURY TRIAL DEMANDED

Plaintiff demands trial by jury.

Respectfully submitted,

One of the Attorneys for Plaintiff
RNA Corporation

Frederic A. Mendelsohn
Adam J. Glazer
SCHOENBERG, FISHER, NEWMAN
   & ROSENBERG, LTD.
222 South Riverside Plaza, Suite 2100
Chicago, Illinois 60606
(312)648-2300

F:\users\FAM\RNA\Minnetonka\Complaint -- MBI

# EXHIBIT  A



**RNA**

13750 Chatham St. Blue Island, Illinois 60406 • 708 / 597-7777 • 800 / 898-4RNA • Fax 708 / 597-8151

# CONTRACT FILLING PURCHASE AGREEMENT
## BETWEEN MINNETONKA BRANDS, INC. AND RNA CORPORATION
### MARCH 1, 1999

This Agreement for the purchase of contract filling of various personal care products dated March 1, 1999 is between Minnetonka Brands, Inc. 7665 Commerce Way, Eden Prairie, Minnesota 55344 (hereinafter MBI) and RNA Corporation, 13750 Chatham Street, Blue Island, Illinois 60406 (hereinafter RNA). MBI is a marketer of proprietary brands of personal care products, including but not limited to Hair Care and Bath Products. RNA is a contract filler of personal care products, including but not limited to Hair Care and Bath Products. Both companies have interest in doing business with the other.

The purpose of this Agreement is to establish the parameters and obligations for which each company is committed to the other for the contract filling and assembly of various personal care products.

1.   RNA willingly accepts the opportunity to be of service to MBI and stipulates that the previously signed nondisclosure agreement is in full effect and will remain in effect for a period not longer than two years from the time both parties cease doing business, on all formulas provided to RNA by MBI.

2.   MBI has provided RNA with a list of products (Attachment A) and requested RNA provide filling quotations for each product. RNA has provided pricing (Attachment A) for each product separately.

     Payment terms are NET 60 days from shipment or storage at RNA. RNA agrees to provide additional extended payment terms of NET 90 days from shipment or storage of product for production made in March, April and May of 1999.

     Shipment instructions are communicated each month via purchase release orders from MBI.

     Storage instructions will be communicated in writing from MBI to RNA.

     Freight terms are FOB Blue Island, Illinois Freight Collect. Carrier to be ordered by MBI.



**EXHIBIT**

_A_



The above extended payment terms are predicated upon this Agreement being in full force and effect for a minimum of three years from the date of signature. The filling costs for the products listed and made a part of this Agreement (Attachment A) will remain unchanged for a period of one year from the signing of this Agreement except as provided for in Section 4 #3. Palletizing and loading product onto carrier are included in the unit pricing. MBI will arrange for the implementation of a pallet exchange program whereby the freight carrier will deliver to RNA a number of pallets equal to the number they are picking up.

3.  On a monthly basis, MBI will provide RNA with a filling forecast detailing contract filling needs for a rolling four-month period. RNA will purchase component chemicals for the first two months. MBI agrees to indemnify RNA for the purchase of special chemicals up to the quantity required for the forecasted two-month period.

4.  On a monthly basis (approximately the 25th of each month), MBI will provide RNA with a firm purchase order detailing the required production for the following month. MBI will also prioritize the deliveries for this purchase order. RNA agrees to provide a weekly production status report (Attachment B) detailing actual and planned production for the next four weeks. This production schedule will be updated weekly to report changes in quantity or product component requirements. RNA's production schedule is an important tool in the communication of component requirements and must be provided weekly. Time is of the essence in producing the production schedule and related product deliveries. If RNA communicates changes in the delivery of product on a timely basis, MBI agrees that it shall not hold RNA liable for damages as a result of failure to deliver product on time.

MBI will arrange to have all packaging components delivered to RNA as communicated on the weekly RNA production schedule. It is a requirement of MBI to provide suitable components 15 days prior to production. RNA must communicate the production schedule to insure timely delivery of components. Upon receipt of all packaging components, RNA will execute the schedule production.

RNA agrees to commit production capacity sufficient to produce 40,000 units per day, 20 days per month, for a maximum of 800,000 units per month on a make and ship basis. MBI and RNA agree that capacity utilization is important to the pricing of this Agreement and MBI intends to place orders not less than 600,000 units per month to be produced at the rate of 30,000 units per day, 20 days per month. This capacity commitment effectively utilizes one (1) production line for the exclusive use of MBI. Unit commitment by MBI is subject to customer demand. If aggregate demand falls below 600,000 units for two (2) consecutive months, prices may be subject to review and renegotiations to adjust for the lower demand levels.



5.     RNA agrees to provide an inventory runout report at the completion of each purchase order (Attachment C). The runout report details the quantity of components returned to inventory and the scrap reported for each production run. Completion of this task is an important tool in maintaining inventory integrity. Failure to provide the runout information may result in inventory loss chargebacks at year-end.

6.     Weekly or as required by MBI, MBI will communicate with RNA to release components required for production.

7.     If one party fails to meet an obligation of this Agreement, the other party will give notice in writing, via U.S. Certified Mail, Return Receipt Requested, detailing the failure and the negative impact of that action. If to RNA, to the attention of Muhammad Akhtar. If to MBI, to the attention of either Larry Wilhelm or Rick Groonwald. Upon receipt of notice, the failing party will have 30 days to cure or remedy the problem. If the problem is not corrected within 30 days from notice, this Agreement may be terminated.

8.     Absent any breach of the Agreement, either party may terminate this Agreement with 90 Days written Notice of Termination. In the event that MBI elects to terminate the Agreement, MBI agrees to indemnify RNA within 30 days for any chemicals specially purchased and in RNA's inventory up to 8 weeks of current forecasted consumption. It is understood that by providing 90 days of notice before Termination that all inventories should be consumed prior to the cessation of business unless the forecast is dramatically reduced at the time of the Notice to Terminate.

9.     All claims, disputes and other matters that arise out of, or relate to, this Agreement, its performance or its breach, involving claims by either party not exceeding $200,000 (if each party has a claim, they shall not be aggregated for this purpose) shall be settled by Binding Arbitration in accordance with the Commercial Arbitration Rules of the American Arbitration Association, provided that any award must be based upon the terms of this Agreement and the rules of law applicable to the facts of such dispute and the Arbitrator will be so bound. The Arbitrator will be required to issue a written opinion explaining the decision..

    The decision of the Arbitrator (as to all of arbitrable claims) shall be final and binding upon the parties. Under no circumstance shall the arbitrator have any power, jurisdiction, or authority to award punitive or exemplary damages to any party. Provided, however that either party to this Agreement may initiate suit in any court of competent jurisdiction (1) if its claim exceeds $200,000, and/or (2) requesting equitable relief in connection with a dispute arising under or with respect to this Agreement.



As the Agreement shall be construed according to the laws of the State of Illinois, any such arbitration shall take place in the County of Cook, State of Illinois with a single Arbitrator mutually agreed upon, selected from within the Metropolitan Area of Chicago, Illinois, expert in Civil Law and licensed to practice law in the State of Illinois. The party against whom the award is rendered shall assume and pay all cost associated with such arbitration, except for attorney fees wherein each party will be responsible for their own costs.

It is expressly agreed to between the parties that they are compelled to provide pre-hearing testimony (i.e. through depositions) and/or documents in a timely fashion not to exceed 28 days from receipt of request, and to comply with any Arbitration order.

10.   The failure of either party in any one or more instances to insist on performance of any of the provisions, or any part of any such provision, shall in no way be construed to be a waiver of such provision, or any part in the future.

11.   Any action or proceeding arising out of or relating to this Agreement will submit to the jurisdiction of the United States District Court for the Northern District of Illinois, Eastern Division.

12.   This Agreement shall be construed according to the laws of the state of Illinois, excluding its conflicts of law provisions.

13.   RNA is completely responsible for its own quality control, including the quality of chemicals specified by MBI for use in its products. MBI's participation is cursory in nature. RNA shall make its Quality Assurance Plan available to MBI as required.


AGREED BY:

RNA CORPORATION                          MINNETONKA BRANDS, INC.

_Muhammad M. Akhtar_   4/9/99           _Rick Groonwald_   3/18/99
Muhammad M. Akhtar        Date          Rick Groonwald         Date
President                               Director of Operations

Attachment 'A'

4/21/99

| ITEM DESC | UM | Annualized Forecast | RNA 3/19/99 |
|---|---|---|---|
| Seame Street Bubble Bath Collectible Character 10oz | EA | 127440 | $0.290 |
| Seame Street Shampoo/Detangler 7oz Twin | EA | 232320 | |
| Seame Street Figure Topper Bubble Bath 11oz | EA | 111120 | $0.250 |
| Seame Street Figure Topper Shampoo 11oz | EA | 44280 | $0.270 |
| SST 16OZ Bubble Bath Basic Green | EA | 612000 | $0.310 |
| SST 16OZ Bubble Bath Basic Pink | EA | 480000 | $0.310 |
| SST 11OZ Shampoo Basic | EA | 36000 | $0.270 |
| SST 32OZ BUBBLE BATH PLAY BLOWING BUBBLES | EA | 11400 | |
| SST BLOWING BUBBLES 2/2 PAKS | EA | 960 | |
| SST 8OZ ABGEL CHRY PUMP | EA | 30000 | |
| SST/LT 2OZ ABGEL BASIC ASST0120902 | EA | 86400 | |
| SST BBATH PLAY FPAINT   6PK | EA | 142800 | |
| SST 10OZ LIQUID SOAP 3D PUMP DISPENSER (ELMO/COOKIE | EA | 102000 | |
| SST 7OZ DTGLR BASIC   00600007 | EA | 204000 | $0.190 |
| SST LIP BALM | EA | 324000 | |
| DMV 10OZ BBATH ASST   00600010 | EA | 264000 | |
| VILLAGE NATURAL 28OZ BUBBLE BATH JUG | EA | 1359600 | $0.460 |
| VILLAGE NATURAL 13.5OZ BWASH | EA | 664800 | $0.330 |
| VILLAGE NATURAL 6OZ BODY SPRAY | EA | 33000 | |
| VILLAGE NATURAL 39OZ BATH CRYSTALS | EA | 195240 | |
| VILLAGE NATURAL 28OZ BATH CRYSTALS | EA | 147600 | |
| VILLAGE PRIVATE MOMENTS DISCONTINUED 3/99 | | | |
| LOONEY TUNES 11OZ SHAMPOO SQUIRTER TOP | EA | 1899600 | |
| LT BBATH PLAY BDYMRKR   6PK | EA | 1200 | |
| LT BBATH PLAY FPAINT   6PK | EA | 80400 | |
| LT 16OZ BB BASIC TAZ/TWY   00600016 | EA | 60000 | $0.310 |
| LT 12OZ SHMPO BASIC BUGS   00600012 | EA | 3840 | |
| LT 7OZ DTGLR BASIC LOLA   00600007 | EA | 2280 | $0.190 |
| LOONEY TUNES 2OZ ANTIBACTERIAL GEL | EA | 25500 | |
| LT 8OZ ABGEL CHRY   00600008 | EA | 38400 | |
| LT 18OZ LQDSP 3D PUMP TAZ 00600010 | EA | 13200 | |
| LT 15OZ LQDSP 3D PUMP TWTY 00600015 | EA | 51000 | |
| LT 7OZ BBATH CCHAR TWTY   00600007 | EA | 4200 | |
| LOONEY TUNES LIP BALM | EA | 548640 | |
| BLT 11OZ SHMPO SOKTOP TWTY 00600011 | EA | 2000 | $0.320 |
| BLT 11OZ LTN SOKTOP BUGS   00600011 | EA | 2000 | |
| BLT 11OZ BBATH SOKTOP TAZ   00600011 | EA | 2000 | |
| STARWARS 16OZ BUBBLE BATH (WMED) | EA | 156600 | $0.440 |
| STARWARS 11OZ BUBBLE BATH HEAD TOPPER | EA | 459960 | $0.330 |
| STARWARS 11OZ BODY WASH HEAD TOPPER | EA | 1066600 | $0.330 |
| STARWARS 11OZ SHAMPOO HEAD TOPPER | EA | 418960 | $0.330 |
| STARWARS LIP BALM | EA | 1564800 | |
| STARWARS GLYCERINE BAR SOAP | EA | 2107200 | |
| STARWARS 11OZ EPS 1 QUEEN AMIDALA LOTION | EA | 60000 | |

# EXHIBIT  B

13:11:10
FUNCTION   APTB

MINNETONK NDS. INC
A/P A GED TRIAL   NCE BY DU  E

E: 10/05/2000
F 10/05/2000

VENDOR   271463   RNA CORP  ORATION A CONTACT:  AD/MARSHA NE: 800.896.        62

| INV NO | P | INV DATE | CURRENT | PAST 1-30 | PAST 31-80 | PAST 61-90 | OVER 90 | TOTAL A/P | Best Case | Worst Case | Check Date |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | 2,690.74 | 2,690.74 | 20,000.00 | 13,545.34 | 10-Nov |
| 22133 P | | 30800 | | | | | 10,857.60 | 10,857.60 | 20,000.00 | | 17-Nov |
| 22161 N | | 31700 | | | | | 8,953.68 | 8,953.68 | 20,000.00 | | 24-Nov |
| 22168 N | | 32300 | | | | | 10,732.14 | 10,732.14 | 20,000.00 | | 1-Dec |
| 22182 N | | 33000 | | | | | 612.46 | 612.46 | 20,000.00 | | 8-Dec |
| 22203 N | | 40600 | | | | | 9,820.58 | 9,820.58 | 20,000.00 | | 15-Dec |
| 22206 N | | 40700 | | | | 10,225.86 | | 10,225.86 | 20,000.00 | | 22-Dec |
| 22211 N | | 41100 | | | | 10,857.60 | | 10,857.60 | 20,000.00 | | 29-Dec |
| 22214 N | | 41200 | | | | 9,336.84 | | 9,336.84 | | | |
| 22227 N | | 41700 | | | | 5,148.48 | | 5,148.48 | | | |
| 22250 N | | 50100 | | | | 4,981.32 | | 4,981.32 | | | |
| 22256 N | | 50300 | | | | | | 9,142.68 | | | |
| 22270 N | | 50600 | | | 9,142.68 | | | 9,218.34 | | | |
| 22271 N | | 51000 | | | 9,218.34 | | | 9,978.24 | | | |
| 22280 N | | 51200 | | | 9,978.24 | | | 10,092.00 | | | |
| 22283 N | | 51500 | | | 10,092.00 | | | 57.32 | | | |
| 22320 N | | 53100 | | | 57.32 | | | 33.41 | | | |
| 22324 N | | 60100 | | | 33.41 | | | 18.20 | | | |
| 22327 N | | 60100 | | | 18.20 | | | 9,025.90 | | | |
| 22331 N | | 60200 | | | 9,025.90 | | | 8,895.00 | | | |
| 22338 N | | 60700 | | 8,895.00 | | | | 8,628.00 | | | |
| 22347 N | | 71200 | 8,628.00 | | | | | 9,313.20 | | | |
| 22358 N | | 61600 | | 9,313.20 | | | | 9,937.80 | | | |
| 22373 N | | 62300 | | 9,937.80 | | | | 7,107.08 | | | |
| 22381 N | | 63000 | | 7,107.08 | | | | 8,964.72 | | | |
| 22383 N | | 63000 | | 8,964.72 | | | | 9,426.60 | | | |
| 22421 N | | 71700 | 9,426.60 | | | | | 6,570.48 | | | |
| 22422 N | | 72000 | 6,570.48 | | | | | 1,893.36 | | | |
| 22432 N | | 72600 | 1,893.36 | | | | | 1,180.80 | | | |
| 22441 N | | 72800 | 1,180.80 | | | | | 1,343.70 | | | |
| 22461 N | | 80700 | 1,343.70 | | | | | 5,014.92 | | | |
| 22463 N | | 81500 | 5,014.92 | | | | | 3,191.76 | | | |
| 22485 N | | 82100 | 3,191.76 | | | | | 7,908.66 | | | |
| 22501 N | | 82800 | 7,908.66 | | | | | 446.40 | | | |
| 22506 N | | 82800 | 446.40 | | | | | 793.60 | | | |
| 22507 N | | 82800 | 793.60 | | | | | 1,153.31 | | | |
| 22517 N | | 90100 | 1,153.31 | | | | | 4,441.18 | | | |
| 22518 N | | 90100 | 4,441.18 | | | | | 541.20 | | | |
| 22549 N | | 91100 | 541.20 | | | | | | | | |
| 9805 N | | 121799 | | | | | 11,199.60 | 11,199.60 | 18,136.72 | 11,199.60 | 13-Oct |
| 9808 P | | 122799 | | | | | 6,937.12 | 6,937.12 | 14,294.08 | 6,937.12 | 20-Oct |
| 9813 N | | 122899 | | | | | 7,356.96 | 7,356.96 | 17,889.12 | 7,356.96 | 27-Oct |
| 9816 N | | 123199 | | | | | 10,532.16 | 10,532.16 | 20,000.00 | 10,532.16 | 3-Nov |
| REPORT   TOTAL | | | 52,533.97 | 44,217.80 | 48,368.15 | 40,550.10 | 79,893.04 | 265,361.06 | | | |

*(handwritten: 10/7/00)*
*(handwritten: Ano 14350 08)*
*(handwritten: Ano A.P.)*

*(handwritten right: 36 02 ...  108 3 ...  $ 144,4...)*

*(handwritten bottom: This n the Pay Plan ... Committed to with  Ron Williams ... This is legible  9/1/2000  NA ... )*

EXHIBIT
tabbies*
B

(THU)10. 5 00 15:16 /ST. 15:15/NO. 3760188027 P 2

OM MINNETONKA BRANDS



13:11:10
FUNCTION   APTB

MINNETONK MDS INC.
A/P AGED TRIAL BLANCE BY DUE DATE

E: 10/05/2000
F: 10/05/2000

62

VENDOR:   271463   RMA CORPORATION A CONTACT:  ADMARSHA NE: 800.896.

| INV NO | P | INV DATE | CURRENT | PAST 1-30 | PAST 31-60 | PAST 61-90 | OVER 90 | TOTAL A/P | Best Case | Worst Case | Check Date |
|--------|---|----------|---------|-----------|------------|-----------|---------|-----------|-----------|------------|------------|
| 22133 | P | 30800 | | | | | 2,690.74 | 2,690.74 | 20,000.00 | 13,149.34 | 10-Nov |
| 22161 | N | 31700 | | | | | 10,857.60 | 10,857.60 | 20,000.00 | | 17-Nov |
| 22166 | N | 32300 | | | | | 8,953.64 | 8,953.64 | 20,000.00 | | 24-Nov |
| 22182 | N | 33000 | | | | | 10,732.14 | 10,732.14 | 20,000.00 | | 1-Dec |
| 22203 | N | 40600 | | | | | 812.40 | 812.40 | 20,000.00 | | 8-Dec |
| 22206 | N | 40700 | | | | | 9,820.58 | 9,820.58 | 20,000.00 | | 15-Dec |
| 22211 | N | 41100 | | | 10,225.66 | | | 10,225.66 | 20,000.00 | | 22-Dec |
| 22214 | N | 41200 | | | 10,857.60 | | | 10,857.60 | 20,000.00 | | 29-Dec |
| 22227 | N | 41700 | | | 9,336.84 | | | 9,336.84 | | | |
| 22250 | N | 50100 | | | 5,146.46 | | | 5,146.46 | | | |
| 22258 | N | 50300 | | | 4,981.32 | | | 4,981.32 | | | |
| 22270 | N | 50600 | | | 9,142.68 | | | 9,142.68 | | | |
| 22271 | N | 51000 | | | 9,218.34 | | | 9,218.34 | | | |
| 22280 | N | 51200 | | | 9,978.24 | | | 9,978.24 | | | |
| 22283 | N | 51500 | | | 10,092.00 | | | 10,092.00 | | | |
| 22320 | N | 53100 | | | 57.32 | | | 57.32 | | | |
| 22324 | N | 60100 | | | 33.41 | | | 33.41 | | | |
| 22327 | N | 60100 | | | 18.20 | | | 18.20 | | | |
| 22331 | N | 60200 | | | 9,825.96 | | | 9,825.96 | | | |
| 22338 | N | 60700 | | 8,895.00 | | | | 8,895.00 | | | |
| 22347 | N | 51200 | | 6,628.00 | | | | 6,628.00 | | | |
| 22358 | N | 61600 | 8,628.00 | | 9,313.20 | | | 9,313.20 | | | |
| 22373 | N | 62300 | | 9,937.50 | | | | 9,937.50 | | | |
| 22381 | N | 63000 | | 7,107.06 | | | | 7,107.06 | | | |
| 22383 | N | 63000 | | 8,964.72 | | | | 8,964.72 | | | |
| 22421 | N | 71700 | 9,426.60 | | | | | 9,426.60 | | | |
| 22422 | N | 72000 | 6,570.45 | | | | | 6,570.45 | | | |
| 22432 | N | 72600 | 1,893.36 | | | | | 1,893.36 | | | |
| 22441 | N | 72600 | 1,180.90 | | | | | 1,180.90 | | | |
| 22461 | N | 80700 | 1,343.70 | | | | | 1,343.70 | | | |
| 22463 | N | 81500 | 5,014.92 | | | | | 5,014.92 | | | |
| 22485 | N | 82100 | 3,191.76 | | | | | 7,908.66 | | | |
| 22501 | N | 82800 | 7,908.66 | | | | | 448.40 | | | |
| 22506 | N | 82800 | 446.40 | | | | | 793.60 | | | |
| 22507 | N | 82600 | 793.60 | | | | | 1,153.31 | | | |
| 22517 | N | 90100 | 1,153.31 | | | | | 4,441.18 | | | |
| 22518 | N | 90100 | 4,441.18 | | | | | 641.20 | | | |
| 22549 | N | 91100 | 641.20 | | | | | | | | |
| 9805 | N | 121799 | | | | | 11,199.60 | 11,199.60 | 18,136.72 | 11,199.60 | 13-Oct |
| 9808 | P | 122799 | | | | | 6,937.12 | 6,937.12 | 14,294.06 | 6,937.12 | 20-Oct |
| 9813 | N | 122699 | | | | | 7,356.96 | 7,356.96 | 17,889.12 | 7,356.96 | 27-Oct |
| 9816 | N | 123199 | | | | | 10,532.16 | 10,532.16 | 20,000.00 | 10,532.16 | 3-Nov |

REPORT   TOTAL                52,533.97   44,217.80   48,366.15   40,550.10   79,693.04   265,361.06

# Exhibit C



**RNA**

ALL THE DIFFERENCE IN THE WORLD

13750 Chatham St. Blue Island, Illinios 60406 ▪ 708 / 597-7777 ▪ 800 / 898-4RNA ▪ Fax 708 / 597-8151

January 19, 2001

Mr. Ron Williams
President
Minnetonka Brands, Inc.
7665 Commerce Way
Eden Prairie, MN 55343

### VIA CERTIFIED MAIL-RETURN RECEIPT REQUESTED

Dear Mr. Williams

Pursuant to Paragraph 7 of the Contract Filling Purchase Agreement between Minnetonka Brands, Inc. (MBI) and RNA Corporation (RNA) dated March 1, 1999, be advised that this is formal notification that MBI has failed to meet its obligations under that agreement. Failure to comply has repeatedly occurred in areas such as; providing monthly filling forecasts for a four month period, firm purchase orders monthly, detailing requirements for the following month, and component deliveries 15 days prior to production, among others. Our greatest concerns have to do with your failure to meet payment terms and place orders in the agreed upon quantities.

The agreement established terms of sale of Net 60 days, an extension of 30 days beyond our normal terms. It was granted in return for the volume commitments and other provisions agreed to. In September 1999, when MBI began its reorganization and recognizing the financial constraints that you were under, we agreed with your predecessor, Mr. Bob Glendon to not enforce the 60 day requirement. In return, Mr. Glendon commited to make weekly payments of $10,000, less the value of goods ordered/shipped for the weeks beginning September 17, 1999 to October 8, 1999. Starting October 15, 1999 the weekly payment would be increased to $20,000, less the value of goods ordered/shipped if any, and was to continue until the balance of money owed was paid in full. These checks were to be received by RNA on Monday of each week. It was also agreed that should RNA ship in excess of the minimum weekly payment received, the additional amount would be added to the minimum payment due the following Monday. If, generally speaking, the provisions of the agreement including quantities of merchandise ordered were not fully met, they were at least, acceptable.



**EXHIBIT**

C



During the third quarter of 2000 you indicated that you were experiencing a decline in business, and that you would not be able to meet the $20,000 weekly minimum. You asked for, and we extended, a grace period, based upon your commitment to submit and adhere to a pay schedule for the fourth quarter. On October 5, MBI submitted a schedule covering the twelve week period of October 13 through December 29. The five week period of October 13 through November 10 had a "Best Case/Worst Case" scenario. Two columns indicated the most that could be paid each week, and the least that would be paid. The aggregate of the "Best Case" column was $90,319.92. The "Worst Case" column was $49,574.18. In actuality, $59,158.34 was received during that time period, which fell within the limits you had established. For the seven weeks of November 17 through December 29 there was no " Worst Case" provision, only a "Best Case" commitment of $20,000 per week or $140,000 dollars for the seven week period. Not one pay date even approximated $20,000. The total received for the seven pay dates equaled $70,800.81---TOTALLY UNACCEPTABLE. The most recent MBI check received, Number 077073 dated 01/03/2001 in the amount of $9,218.34 was in payment of RNA Invoice 22271 dated 05/10/2000--ALSO--TOTALLY UNACCEPTABLE.

MBI has not met the terms of the agreement as written, nor honored the payment date commitments that were "negotiated". Nor has MBI met its minimum monthly purchasing requirements, or even made a credible attempt to. Quite the opposite is true, MBI has taken volume committed to RNA and placed it with newly established suppliers.

In December MBI introduced an extension to its Village Naturals line. Although RNA, through its technology and manufacturing facilities was capable of formulating and producing many of the items, we were not even given the courtesy of the opportunity to bid on the business.

The failure has cost us significantly. We lost the economies of scale in purchasing, and are paying more for chemicals than planned for. Our labor costs have increased dramatically. Your filling charges were predicated upon MBI placing orders of not less than 30,000 units per day, 20 days per month. As a consequence, we are invoking the agreement in its original form and withdrawing any and all concessions or accommodations heretofore granted.

We are associating with this notice  a Statement as of January 2, 2001 and an Aged Receivables statement as of this date showing a balance due RNA to be $285,485.58. The negative impact of owing this amount of money, some of which dates back more than four hundred (400) days, is obvious. As provided in Paragraph 7, MBI has 30 days to cure or remedy this situation by remitting the above amount in full. At that time all



monies reflected on the Aged Receivable statement will be due and payable under the Net 60 day term.

Should you fail to cure or remedy within the specified time, we are prepared to take the additional actions necessary. We trust we have made our position clear.

Sincerely
RNA Corporation


Muhammad M. Akhtar
President

# Exhibit D



**MINNETONKA BRANDS, INC.**

*1st OFFER which we Refused*

7665 Commerce Way, Eden Prairie MN 55344

VIA Fax (708) 597-8151

January 25, 2001

Letter of Intent

Mr. Bob Brown
RNA Corporation
Blue Island, IL

Bob,

Minnetonka Brands, Inc. (MBI) is interested in maintaining a continued business partnership with RNA Corporation (RNA). In reestablishing manufacturing activities with RNA, MBI will initially submit $18,000.00 to $23,000.00 of monthly purchase orders each month. We see that business climbing to the $30,000.00 to $35,000.00 range in the next three to six months. The growth will depend on manufacturer realignment plans in addition to business growth.

MBI will pay RNA approximately $30,000.00 to $40,000.00 per month. In any case monthly payments will be equal to or greater than monthly shipments. The payments will be made in weekly installments. We will attempt to pay full invoices rather than partial payments on an invoice. With this arrangement RNA will experience continuous reductions in outstanding accounts receivable.

RNA and MBI need to reconcile charges incurred by MBI related to labeling expenses on the toddle bottles, K-Mart "no ASN charges", K-Mart "late charges", K-mart "no P.O. on shipper charges."

Steve Storebo (DOO MBI) and you will agree to, in writing, requirements related to on time delivery. As we have discussed on several occasions it is imperative the MBI receive products according to delivery requirements. MBI realizes that RNA requires components accordingly to meet the delivery requirement. These are the items that need to be documented.

Sincerely,

Timothy V. Kraus
Chief Financial Officer

Cc Muhammad Akhtar



**EXHIBIT**

*tabbies*  D

952-949-6421 • Fax 952-949-6417 • e-mail tkraus@byminnetonka.com

# Exhibit E

(MON) 2. 12' 01 18:43/ST. 18:34/NO. 3760188500 P 2

FROM MINNETONKA BRANDS



# MINNETONKA BRANDS, INC.

Mr. John Harms
Director of Marketing
RNA Corp.
13750 Chatham Street
Blue Island, IL 60406

*2ND offer which we negotiated from -*
*3/99 memo indicates accepted price*

February 12, 2001

Dear Mr. Harms:

After careful consideration and review, I have put together a planned schedule for purchase orders for RNA from Minnetonka Brands, Inc. The items listed here account for a considerable portion of the total item's monthly requirement. Most items are "good" products to run as they are larger sizes and require filling, capping, and case packing only. These items account for a monthly dollar volume of about $42,000 - $42,900. We propose RNA fill the following items:

| | |
|---|---|
| 26921 16oz Green Elmo Bubble Bath | 4,000 cases per month |
| 26922 16oz Pink Ernie Bubble Bath | 2,000 cases per month |
| 70260 16oz Blue Tweety Bubble Bath | 2,000 cases per month |
| 24001 11oz Cookie Whistle Topper | 1,000 cases per month |
| 24002 11oz Elmo Whistle Topper | 1,000 cases per month |
| 35000 8.5oz PowerPuff Bodywash | 500 cases per month (beginning May) |
| 35005 8.5oz PowerPuff Shampoo | 500 cases per month (beginning May) |
| 40638 20.5oz VN Raspberry Bath Gel | 1,000 cases per month |
| 40640 20.5oz VN SeaSpray Bath Gel | 3,000 cases per month |
| 40540 28oz VN Tropical SeaSpray | 2,600 cases per month |

*$ 70,000*
*$ 35,000*

The other issue to address is RNA's filling cost for the above products. I have listed below the "target" price we would like to have you fill these products at. These target prices represent what we are currently paying for fill at other suppliers.

| | | |
|---|---|---|
| 16oz Green | .30 per bottle | *Chem 1090 Labor* |
| 16oz Pink | .30 per bottle | *.1409 14 14.5* |
| 16oz Blue | .30 per bottle | |
| 11oz Cookie Whistle Topper | .274 per bottle | *.1049 16.4* |

EXHIBIT

E

7665 Commerce Way • Eden Prairie, MN 55344 • 612-949-6400 • 612-949-641/ FAX

(MON) 2. 12' 01 18:37/ST. 18:31  3760188499 P 3

FROM MINNETONKA BRANDS

| | | |
|---|---|---|
| 11oz Elmo Whistle Topper | .274 per bottle | — .29 ? |
| 8.5oz Powerpuff Bodywash | .278 per bottle | — .22 |
| 8.5oz Powerpuff Shampoo | .241 per bottle | .22 |
| 20.5oz VN Raspberry Bath Gel | TBD | > Bid ? |
| 20.5oz VN SeaSpray Bath Gel | TBD | |
| 28oz VN Tropical SeaSpray | .55 per bottle | — .60 |

We would plan to have component inventory shipped to your location 7 – 10 days in advance of the run date. We would require a reconciliation at the end of each purchase order; accounting for the component usage and adjusting your inventory numbers as differences are noted.

After our meeting on February 1, 2001 I am certain of our abilities and desire to put an adequate system in place that will allow us both to work in the most productive and thus cost effective manner. As things improve, we can increase the overall volume of production with you. If after review of this information you have any questions, feel free to contact me. I will wait for your response.

Sincerely,

Steve Storebo
Director of Operations
Minnetonka Brands, Inc.

cc:   Ron Williams
      Tim Kraus

# EXHIBIT F

1



**RNA**

ALL THE DIFFERENCE IN THE WORLD

February 27, 2001                    **Memorandum of Agreement**

This document is valid only as a rider to and made a part of the Contract Filling Agreement dated March 1, 1999, by and between MBI, a Minnesota Corporation, whose principal place of business is 7665 Commerce Way Eden Prairie, MN. 55344, and RNA Corporation, an Illinois Corporation, whose principal place of business is 13750 South Chatham St., Blue Island, IL. 60406.

It is not intended to be, nor should it be construed as a negation of any portion of the above referenced agreement, nor is it a retraction of the demand letter dated January 19, 2001 advising MBI of its breach of the March 1, 1999 agreement, and the provision to remedy or cure the breach. RNA does not waive its rights to enforce those provisions should it deem necessary to do so.

This agreement speaks to two specific provisions previously addressed; Terms of Payment and Minimum Monthly Production Demands. In consideration for monthly purchases (100,000 units and/or $40,000) and minimum repayment or existing debt ($10,000 to $15,000 per month resulting in a reduction of $150,000 per year) made by MBI, RNA has agreed (as long as met) not to pursue their legal options as outlined in The Agreement referenced above.

1. Quantities as stated in Mr. Storebo's letter of 2/12/01 totaling 100,000 units per month, with a minimum value of $40,000 is acceptable. Muhammad has requested that you review the possibility of adding an additional flavor to the 28-oz. VN Tropical SeaSpray Bbath.

2. Prices agreed upon are as follows. MBI has also agreed to provide shipper labels and honor changes for the cost of pallets. Blend and fill price is as follows:

| | |
|---|---|
| 16-oz. Green | $0.32/unit |
| 16-oz. Pink | $0.32/unit |
| 16-oz. Blue | $0.32/unit |
| | |
| 11-oz. Cookie Whistle Topper | $0.270/unit |
| 11-oz. Elmo Whistle Topper | $0.270/unit |
| | |
| 8.5-oz. Powerpuff Bodywash | $0.230/unit |
| 8.5-oz. Powerpuff Shampoo | $0.230/unit |
| | |
| 20.5-oz. Village Naturals Raspberry Bath Gel | $0.600/unit |
| 20.5-oz. Village Naturals SeaSpray Bath Gel | $0.600/unit |
| | |
| 28-oz. Village Naturals Tropical SeaSpray | $0.63/unit |



**EXHIBIT**

tabbies

F

2

3.  All prices will be held for two years absent any increase in chemical cost.  Chemical cost increases will be billed quarterly accompanied with appropriate documentation such as chemical vendor notifications.

4.  Debt reduction payments will be a minimum of $10,000 to $15,000 per month, yearly $150,000 minimum.  There will be no extension of credit as long as any unpaid balance of existing debt remains.  Terms of sale are payment before shipment.  We will advise when merchandise is ready and MBI will remit.  Wire transfer of funds would be the most expedient method, however the choice MDI's.

5. RNA is also invoicing 3,142 lbs. of fragrance purchased for MBI (Endurian Forest Fragrance, Star Wars).  We also understand that MBI will attempt to use this fragrance in potential new business.


Muhammad Ahktar
President
RNA Corporation

Date _____


Ron Williams
President
Minnetonka Brands, Inc.

Date _____

# Exhibit G



# MINNETONKA BRANDS, INC.

Muhammad M. Akhtar, President
RNA Corporation
13750 Chatham Street
Blue Island, IL 60406

March 26, 2001

Dear Muhammad:

After much internal discussion and deliberation I have concluded that for the foreseeable future it is in the best interest of both our companies to terminate our business relationship at this time. Recent events leading up to this decision include:

- RNA's decision not to produce any products for MBI's March requirements, products for which MBI had placed purchase orders, until a formal agreement had been signed by MBI and returned to RNA.
- RNA requesting a price increase siting that RNA does not want to purchase tank quantities of *Texapon*. This before we even started our new proposed arrangement under the terms of the new agreement, which included a new pricing structure.
- Failure of RNA to fill product or release packaging materials sent to them by MBI to cover our March purchase orders. This refusal once again forced MBI into an out of stock situation for these items. This action made it necessary for MBI to short ship our most important customers.

Muhammad, MBI intends to maintain a payment schedule to clear up old debt at the rate of $150,000.00 per year. If possible MBI will improve upon the payment schedule.

I am sorry to find it necessary to take this action, but under the circumstances I truly believe it will be best for both of our companies.

Very truly yours,

Ron Williams
President & CEO

EXHIBIT
tabbies®
G

JS 44
(Rev. 07/89)

# CIVIL COVER SHEET

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I (a) PLAINTIFFS

RNA CORPORATION, an Illinois corporation,

## DEFENDANTS

MINNETONKA BRANDS, INC., a Minnesota corporation

**DOCKETED**

AUG 1 7 2001

**(b)** COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF ___Cook___
(EXCEPT IN U.S. PLAINTIFF CASES)

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT _____
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED

**(c)** ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)

Frederic A. Mendelsohn/Adam J. Glazer
Schoenberg, Fisher, Newman & Rosenberg, Ltd.
222 South Riverside Plaza, Suite 2100
Chicago, IL 60606 / 312-648-2300

ATTORNEYS (IF KNOWN)

# 01C 6321

JUDGE MORAN  MAGISTRATE JUDGE DENLOW

## II. BASIS OF JURISDICTION (PLACE AN x IN ONE BOX ONLY)

☐ 1 U.S. Government Plaintiff

☐ 2 U.S. Government Defendant

☐ 3 Federal Question (U.S. Government Not a Party)

☒ 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN x IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT)
(For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in This State | ☒ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☒ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. CAUSE OF ACTION (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)
DO NOT CITE JURISDICTIONAL STATUTES UNLESS DIVERSITY

Action for contract damages, incidental damages, and lost profits. Diversity jurisdiction under 28 U.S.C. Section 1332.

## V. NATURE OF SUIT (PLACE AN X IN ONE BOX ONLY)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury— Med Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 365 Personal Injury— Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 450 Commerce/ICC Rates |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | **PERSONAL PROPERTY** | ☐ 650 Airline Regs | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | ☐ 370 Other Fraud | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 810 Selective Service |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 371 Truth in Lending | ☐ 690 Other | **SOCIAL SECURITY** | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 380 Other Personal Property Damage | **LABOR** | ☐ 861 HIA (1395ff) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☒ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 385 Property Damage Product Liability | ☐ 710 Fair Labor Standards Act | ☐ 862 Black Lung (923) | ☐ 891 Agricultural Acts |
| ☐ 195 Contract Product Liability | | | ☐ 720 Labor/Mgmt. Relations | ☐ 863 DIWC/DIWW (405(g)) | ☐ 892 Economic Stabilization Act |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act | ☐ 864 SSID Title XVI | ☐ 893 Environmental Matters |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence | ☐ 740 Railway Labor Act | ☐ 865 RSI (405(g)) | ☐ 894 Energy Allocation Act |
| ☐ 220 Foreclosure | ☐ 442 Employment | Habeas Corpus: | ☐ 790 Other Labor Litigation | **FEDERAL TAX SUITS** | ☐ 895 Freedom of Information Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations | ☐ 530 General | ☐ 791 Empl. Ret. Inc. Security Act | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 535 Death Penalty | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 950 Constitutionality of State Statutes |
| ☐ 245 Tort Product Liability | ☐ 440 Other Civil Rights | ☐ 540 Mandamus & Other | | | ☐ 890 Other Statutory Actions |
| ☐ 290 All Other Real Property | | ☐ 550 Civil Rights | | | |

## VI. ORIGIN (PLACE AN x IN ONE BOX ONLY)

☒ 1 Original Proceeding
☐ 2 Removed from State Court
☐ 3 Remanded from Appellate Court
☐ 4 Reinstated or Reopened
☐ 5 Transferred from another district (specify)
☐ 6 Multidistrict Litigation
☐ 7 Appeal to District Judge from Magistrate Judgment

## VII. REQUESTED IN COMPLAINT:

CHECK IF THIS IS A CLASS ACTION
☐ UNDER F.R.C.P. 23

DEMAND $
$370,880.12 plus

Check YES only if demanded in complaint
JURY DEMAND: ☒ YES

## VIII. REMARKS

General Rule 2.21D(2)

In response to ☒ is not a refiling of a previously dismissed action
this case ☐ is a refiling of case number _____ of Judge _____

DATE
August 10, 2001

SIGNATURE OF ATTORNEY OF RECORD
_Adam Glazer_

UNITED STATES DISTRICT COURT

## UNITED STATES DISTRICT COURT
### NORTHERN DISTRICT OF ILLINOIS

**DOCKETED**

AUG 1 7 2001

In the Matter of

RNA CORPORATION, an Illinois corporation

v.

MINNETONKA BRANDS, INC., a Minnesota corporation.

Case Number: **01C 6321**

APPEARANCES ARE HEREBY FILED BY THE UNDERSIGNED AS ATTORNEY(S) FOR JUDGE MORAN

RNA CORPORATION

MAGISTRATE JUDGE DENLOW

| (A) | | | (B) | | |
|---|---|---|---|---|---|
| SIGNATURE | | | SIGNATURE | | |
| NAME Frederic A. Mendelsohn | | | NAME Adam J. Glazer | | |
| FIRM Schoenberg, Fisher, Newman & Rosenberg, Ltd. | | | FIRM Schoenberg, Fisher, Newman & Rosenberg, Ltd. | | |
| STREET ADDRESS 222 South Riverside Plaza, #2100 | | | STREET ADDRESS 222 South Riverside Plaza, #2100 | | |
| CITY/STATE/ZIP Chicago, Illinois 60606 | | | CITY/STATE/ZIP Chicago, Illinois 60606 | | |
| TELEPHONE NUMBER 312/648-2300 | | | TELEPHONE NUMBER 312/648-2300 | | |
| IDENTIFICATION NUMBER (SEE ITEM 4 ON REVERSE) 06193281 | | | IDENTIFICATION NUMBER (SEE ITEM 4 ON REVERSE) 6199294 | | |
| MEMBER OF TRIAL BAR? | YES ☒ | NO ☐ | MEMBER OF TRIAL BAR? | YES ☒ | NO ☐ |
| TRIAL ATTORNEY? | YES ☒ | NO ☐ | TRIAL ATTORNEY? | YES ☒ | NO ☐ |
| | | | DESIGNATED AS LOCAL COUNSEL? | YES ☐ | NO ☒ |
| (C) | | | (D) | | |
| SIGNATURE | | | SIGNATURE | | |
| NAME | | | NAME | | |
| FIRM | | | FIRM | | |
| STREET ADDRESS | | | STREET ADDRESS | | |
| CITY/STATE/ZIP | | | CITY/STATE/ZIP | | |
| TELEPHONE NUMBER | | | TELEPHONE NUMBER | | |
| IDENTIFICATION NUMBER (SEE ITEM 4 ON REVERSE) | | | IDENTIFICATION NUMBER (SEE ITEM 4 ON REVERSE) | | |
| MEMBER OF TRIAL BAR? | YES ☐ | NO ☐ | MEMBER OF TRIAL BAR? | YES ☐ | NO ☐ |
| TRIAL ATTORNEY? | YES ☐ | NO ☐ | TRIAL ATTORNEY? | YES ☐ | NO ☐ |
| DESIGNATED AS LOCAL COUNSEL? | YES ☐ | NO ☐ | DESIGNATED AS LOCAL COUNSEL? | YES ☐ | NO ☐ |

PLEASE COMPLETE IN ACCORDANCE WITH INSTRUCTIONS ON REVERSE.